Dear Mayor Pro Tem Hillard:
You have advised us that you serve as one of three aldermen for the village of Sicily Island, a Lawrason Act municipality. You also advise that you serve as Mayor Pro Tem, and that a special meeting has been called to appoint an interim mayor to the vacancy created by the recall of the former mayor.
In response to your first question, a mayor pro tempore retains his right to vote as an alderman. See Attorney General Opinions 93-669 and 93-398A, copies attached.
Our response to your first question obviates the necessity for a response to your second and third questions.
In response to your fourth question, the procedures governing the appointment are stated in the Election Code at R.S. 18:602(A) and (D), providing:
 § 602. Vacancies in certain local and municipal offices; exceptions
 A. When a vacancy occurs in the office of a member of a parish or municipal governing authority or a combination thereof, a mayor, or any other local or municipal office, except an office covered by Subsections B and C hereof and except the office of judge, state legislator, or marshal of a city or municipal court, and the office is filled by election wholly within the boundaries of a local governmental subdivision where the vacancy occurs shall, within ten days, appoint a person to fill the vacancy who meets the qualifications of the office. The presiding officer of the governing authority shall not be required to vote on such an appointment to be made by the governing authority of a local governmental subdivision unless a tie vote occurs thereon, in which case he shall vote to break the tie; however, in no case shall the presiding officer vote more than once on the appointment.
 * * * * *
 D. If a vacancy is not filled within the time specified in Subsections A, B, or C herein, the governor shall fill the vacancy.
As the statute reflects, the mayor pro tempore is not required to vote as the presiding officer unless a tie vote occurs. In that circumstance, he shall vote as the presiding officer to break the tie, but in no case shall he vote more than once, as presiding officer, on the appointment.
In response to your fifth question, there is no prohibition in the Election Code preventing a person designated interim appointee in the office of mayor from becoming a candidate at the special election called to fill the office for the remainder of the term. See Attorney General Opinion 80-91, copy attached.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
OPINION NUMBER 93-669
NOVEMBER 16, 1993
 Syllabus
24 — ELECTIONS — Conduct of Primaries General 24-A — ELECTIONS — Recall 35 — ELECTIONS — Calling or ordering notice holding; Municipal general elections — time place of holding 77 — OFFICERS — Local Municipal; Selection, Qualifications Tenure; vacancies R.S. 18:602(F), R.S. 18:602(E)(2)(a), AGO 93-398A, AGO 93-698
Based on the October 16th election results, the governing authority of the Village of Powhatan shall proceed to make an appointment to fill the vacancy in the office of alderman, within ten days of the vacancy. (LSA-R.S. 18:602(A)). If the mayor is recalled at the November 13th election (see Opinion No. 93-698), the mayor pro tempore will not assume the mayor's vacancy, but act in the absence of the mayor. Additionally, the mayor pro tempore retains his right to vote to appoint a qualified person to fill the vacancy in the office of mayor. (See Op. No. 93-398 A). The governing authority shall issue a proclamation, within ten days of the vacancy, or vacancies (if applicable), calling a special election on October 1, 1994 (primary) and November 8, 1994 (general).
Honorable O. V. Hall Alderman/Mayor Pro Tempore Village of Powhatan Post Office Box 4043 Powhatan, Louisiana 71066
Dear Mrs. Hall:
Our office is in receipt of your request for an Attorney General's opinion regarding the legal responsibilities and duties of the governing authority for the Village of Powhatan. We will reiterate the facts from your letter of September 1, 1993. The Mayor of the Village of Powhatan and an aldermen are on the October 16th ballot for the question of recall. If the mayor and alderman are recalled, you have the following questions:
 1. Will the mayor pro tempore assume the mayor's vacancy?
 2. Will two aldermen be appointed to fill vacancies, or will the council appoint a mayor and an alderman?
 3. Will the governing body have to issue a proclamation ordering a special election to fill the vacancies within ten days?
The Village of Powhatan is a Lawrason Act municipality. (LSA-R.S. 33:321
et seq.) Under the provisions of the Lawrason Act, R.S. 33:385, the law provides for a vacancy in the office of alderman to be filled pursuant to R.S. 18:602. Section 602 states, in pertinent part:
 A. When a vacancy occurs in the office of a member of a parish or municipal governing authority or a combination thereof, a mayor, or any other local or municipal office, . . . and the office is filled by election wholly within the boundaries of a local governmental subdivision, the governing authority of the local governmental subdivision where the vacancy occurs shall, within ten days, appoint a person to fill the vacancy who meets the qualifications of the office. The presiding officer of the governing authority shall not be required to vote on such an appointment to be made by the governing authority of a local governmental subdivision unless a tie vote occurs thereon, in which case he shall vote to break the tie; however, in no case shall the presiding officer vote more than once on the appointment.
 * * *
 D. If a vacancy is not filled within the time specified in Subsections A, B, or C herein, the governor shall fill the vacancy.
 E.(1)(a) If the unexpired term of an office covered by Subsection A, B, or C above is one year or less, the person appointed to fill the vacancy or designated to assume the duties of the office shall serve for the remainder of the unexpired term.
 (2)(a) If the unexpired term exceeds one year, the governing authority of the local governmental subdivision in which the vacancy occurs, . . . within ten days after the vacancy occurs, shall issue a proclamation ordering a special election to fill the vacancy and shall specify in the proclamation, in accordance with R.S. 18:402, the dates on which the primary and general elections shall be held. In selecting the dates for such special elections, the governing authority, . . . shall first choose a gubernatorial or congressional election date. If no such date is available within a year of the occurrence of the vacancy, the governing authority, . . . shall then select an election date in accordance with R.S. 18:402. If the governing authority or school board fails to issue the proclamation within ten days after the vacancy occurs, the governor shall issue the proclamation.
 * * *
We will respond to your questions based on the election results of the October 16, 1993 special election for the recall of Mayor Colvin and Alderman Colvin in the Village of Powhatan. In said election, the alderman was recalled by a vote of 44 to 42, and the recall of the mayor resulted in a tie. The question of recalling the mayor will be returned to the people on November 13, 1993. (See Opinion Number 93-698, enclosed herein.)
LSA-R.S. 33:405 provides for the board of aldermen to select one of the aldermen to be mayor pro tempore, who shall act in the absence of the mayor, with the same power and duties, except for the veto power of the mayor. A recent Attorney General Opinion, Number 93-398 A, concludes that the mayor pro tempore retains his power to vote as a councilman, absent a specific statutory prohibition. This opinion further concludes that "nothing in the Lawrason Act (Title 33 of the revised statutes Section 321 et. seq.) indicates that the mayor pro tempore assumes the office of mayor. He is temporarily vested with only the ability to perform some of the mayor's powers, functions and duties."
In response to your first question, if the mayor is recalled on November 13, 1993, it is the opinion of this office that the mayor pro tempore will not assume the mayor's vacancy, but act in the absence of the mayor until an appointment is made to fill the vacancy, in accordance with LSA-R.S. 18:602.
In response to your second question, since only the alderman was recalled at the October 16th election, there is only one vacancy to fill at this time. The governing authority shall, within ten days of the vacancy, appoint a qualified person to the office of alderman. (LSA-R.S.18:602(A))
As of this date, the governing authority consists of the mayor and the remaining two aldermen. However, the mayor is not required to vote on the appointment for the office of alderman unless a tie vote occurs. In that case, the mayor shall vote to break the tie; however, the mayor shall not vote more than once on the appointment. If the governing authority fails to make the appointment within ten days, the governor shall make the appointment. (LSA-R.S. 18:602(D))
If the mayor is recalled at the November 13th election, the governing authority shall, within ten days of the vacancy, appoint a qualified person to the office of mayor. At that time, the governing authority should consist of three aldermen (one who is the newly appointed alderman and one who serves as mayor pro tempore). The mayor pro tempore retains his right to vote as an alderman and also has the right to vote as the presiding officer; however, he is not required to vote as the presiding officer unless a tie vote occurs. In that case, he shall vote as the presiding officer to break the tie, but in no case shall he vote more than once, as presiding officer, on the appointment. If the governing authority fails to make the appointment within ten days, the governor shall do so. (LSA-R.S. 18:602(A) and (D)).
In reference to your third question, the unexpired terms of the mayor and alderman exceed one year. Therefore, it is our opinion that the governing authority shall issue a proclamation within ten days of the vacancy in the office of alderman, ordering a special election and specifying the dates for the primary and general elections. (LSA-R.S.18:602(E)(2)) The governing authority shall first choose a gubernatorial or congressional election date, if available within a year of the occurrence of the vacancy. There is a congressional election date available on October 1, 1994 (primary) and November 8, 1994 (general). If the governing authority fails to issue the proclamation within ten days after the vacancy occurs, the governor shall issue the proclamation calling the special election.
Additionally, if the mayor is recalled at the November 13th election, the governing authority shall issue a proclamation within ten days of the vacancy, ordering a special election for October 1, 1994 (primary) and November 8, 1994 (general). If the governing authority fails to issue said proclamation, the governor shall do so.
We have enclosed herein a copy of the relevant statutes, as per your request, and a copy of Opinion No. 93-398 A. If we can be of further assistance in this matter, please advise.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _____________________ ANGIE ROGERS LaPLACE Assistant Attorney General
RPI/ARL/pb/0017s
Enclosures
OPINION NUMBER 93-398A
RELEASED JULY 29, 1993
71-1 — MUNICIPALITIES — Special Charters 77 — OFFICERS — Local Municipal R.S. 33:321 et seq, City of New Iberia Special Legislative Charter, R.S.33:405, CONST 2.2
Reaffirming Attorney General Opinion 93-398, the trustee appointed to serve as mayor pro tempore may continue to exercise his power to vote in his capacity as trustee, while simultaneously serving as mayor pro tempore. Inasmuch as Attorney General Opinion 90-149 is inconsistent with the conclusion of AG Opinion 93-398 and 93-398A, it is recalled.
Mr. John Jeffrey Simon Attorney at Law P.O. Box 9260 New Iberia, LA 70562-9260
Dear Mr. Simon:
In your letter of July 6, 1993, you indicated that you had relied upon Opinion 90-149 of this office in your rendering of advice to the City of New Iberia in your capacity as City Attorney.
Opinion 90-149 dealt with the issue as to whether R.S. 33:405 A(13), of the Lawrason Act, would operate to deny a municipal councilman, who was selected by his fellow councilmen to be mayor pro tempore, the right to exercise his power to vote as a councilman when he is acting as mayor pro tempore. Opinion 90-149 concluded that the mayor pro tempore may not vote in his capacity as a councilman while presiding over a meeting of the council as mayor pro tempore. The author reasoned that because the Lawrason Act provides that the mayor, when presiding over a council meeting, may only vote to break a tie, the mayor pro tempore, in the absence of the mayor may only perform the duties of the mayor. The rationale of Opinion 90-149 was that in the mayor's absence, the councilman/mayor pro tempore assumes the executive office of mayor and thereby becomes disqualified from exercising his legislative duties. Thus, the mayor pro tempore could only vote in the event of a tie vote of the council. The author of 90-149 relied upon a prior Attorney General's Opinion reported as, opinions of the Attorney General, 1944-1946, p. 616.
In the reported opinion it should be noted that the facts reflect that the municipal by-laws of the Town of Lockport required the convening of a minimum of the mayor and two councilmen. The opinion concluded that if one alderman and the mayor were both absent that the quorum could not be established because the municipality's rules of order required the convening of at least three persons. The rationale of that opinion does not clearly support the conclusion in Opinion 90-149 although it does allude to a provision in the Lawrason Act.
On reconsideration of Opinion 93-398 we now examine whether Opinion 90-149 is distinguishable from opinion 93-398, in light of the fact that New Iberia is governed by a special legislative charter.
The Lawrason Act provision R.S. 33:405 A(3) reads in pertinent part as follows:
 (3) The board of aldermen shall select one of the aldermen to be mayor pro tempore, who shall preside at all meetings in the absence of the mayor, have the same power, and perform all duties of the mayor in the absence or disability of the mayor, except the veto power of the mayor. (Emphasis added).
The New Iberia Charter provision reads in pertinent part as follows:
 (3) Mayor pro tempore. The trustee elected at large shall serve as mayor pro tempore, who, in the absence or inability of the mayor to act, shall exercise all the rights and powers of the office of mayor. (Emphasis added).
According to the two provisions quoted, the following is a summary of mode of selection and powers and functions of the mayor pro tempore.
LAWRASON ACT NEW IBERIA CHARTER
1. Board of aldermen select one 1. Trustee at-large ex officio of their members to be mayor is mayor pro tempore. pro tempore.
2. Presides at meeting in 2. Serves as mayor pro tempore mayor's absence. in mayor's absence or inability. (Sec. 14 of New Iberia Code 3. Has mayor's powers in his provides that the mayor presides absence. over meetings of the Board of Trustees).
4. Performs mayor's duties in 3. Exercises rights and powers his absence or disability. of mayor in absence or inability of mayor.
5. May not veto board's action.
We perceive no significant distinction between the mayor pro tempore's powers, functions and duties under the provisions of R.S. 33:405 or the New Iberia Charter. We are of the opinion that we must adhere to the conclusion reached in Opinion 93-398. First, we believe that Opinion 90-149 incorrectly reached the conclusion that because the mayor pro tempore "assumed" the office of mayor (due to the mayor's absence or inability) he was subject to incapacity to perform his legislative functions. We believe that conclusion is incorrect because nothing in the Lawrason Act (Title 33 of the revised statutes Section 321 et. seq.) indicates that the mayor pro tempore assumes the office of mayor. He is temporarily vested with only the ability to perform some of the mayor's powers, functions and duties. He cannot veto any action by the council as that power is always reserved to the office of mayor. Additionally, the separation of powers among three branches of government applies to state and not local governments (Article II, Louisiana Constitution).
In the absence of a specific statutory prohibitions that would prevent the mayor pro tempore from exercising his power to vote as a councilman he must be deemed to have retained that power. Otherwise, where a councilman is selected from a subdistrict within the municipality his constituency would be without representation which presents equal protection — one-person-one-vote complications. Furthermore, a crafty mayor might purposefully absent himself from any meetings at which the council was to consider overriding the mayor's veto of a council action, thereby increasing the already difficult burden of obtaining a two-thirds vote of the membership of the council that is legally required for an override. Finally, we believe that should the Legislature have intended, in adopting the Lawrason Act, or in New Iberia's special legislative charger, to prevent the mayor pro tempore from exercising his power to vote as a councilman while presiding over the council as mayor pro tempore, that body would have adopted such expressed prohibitions.
Therefore, it is our conclusion that whether according to the Lawrason Act or according to the New Iberia Special Charter a councilman, who is mayor pro tempore, may when presiding as such over a meeting of the municipal council, continue to exercise his power to vote as a councilman. This may result in his voting to make a tie.
Thus, it is the opinion of this office that our conclusion in Opinion 93-398 is reaffirmed. Inasmuch as 90-149 is inconsistent, herewith it is recalled.
Regarding your remaining question where in the absence of the mayor, the mayor pro tempore of New Iberia sought not to vote when the Board of Trustees was considering the override of a mayor's veto and the vote was four for the override and two against the override, it is our opinion that unless there is an explicit charter provision that permits, reconsideration of the vote such may not be reconsidered.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: _________________________ KENNETH C. DEJEAN Assistant Attorney General
KCD:ams:93-398A
OPINION NUMBER 80-91
January 23, 1980
77 — OFFICERS — LOCAL MUNICIPAL, VACANCIES R.S. 18:652 — 654; R.S. 18:602, R.S. 402
Bd. of aldermen advised how to proceed to fill a vacancy in office of mayor.
Mr. Anthony Lamonte Alderman, Village of Tickfaw Tickfaw, Louisiana 70466
Dear Mr. Lamonte:
In your letter of January 21, 1980, you state that the mayor of the Village of Tickfaw resigned on December 31, 1979. You state that you are now serving as mayor pro tem and ask for our advice on the procedure to be followed in appointing or electing a new mayor.
R.S. 18:652 through 654 provide the method for legally resigning a public office. These provisions state:
 "Section 652. Resignations
 A. Except for members of the legislature and the congress, all resignations of elected officials shall be filed with the secretary of state. Resignations may be filed in person or by certified mail, return receipt requested.
 B. A resignation shall be in writing, shall be dated, may specify a prospective date on which the resignation is to be effective and shall be signed by the official and duly acknowledged by him before an officer authorized to administer oaths.
 Section 653. Transmission of Resignations
 The secretary of state shall immediately transmit notice of resignations to the authority required by law to make the appointment to fill the vacancy and to the authority required by law to call the election to fill the vacancy, if said authority is not the same as the authority required to make the appointment.
 Section 654. Effect of Filing of Resignations
 A resignation shall become irrevocable three days after the date on on which the secretary of state has transmitted the notice to the appropriate authority."
The Secretary of State for the State of Louisiana has not received the resignation of Nick Marino as Mayor of the Village of Tickfaw. Therefore, because the provisions of R.S. 18:652 through 654 have not been followed, Nick Marino is still the legal mayor of the Village of Tickfaw. Any purported resignation of Mr. Marino is not effective as the legal requirements for the submission of a resignation have not been followed.
Should Mr. Marino decide to send a proper resignation to the Secretary of State, this resignation will become effective three (3) days after the date on which the Secretary of State transmits notice of the resignation to the governing authority of the Village of Tickfaw. At this point, a vacancy in the office of mayor will exists and the Board of Aldermen of the Village of Tickfaw must take steps to fill this vacancy pursuant to the provisions of R.S. 18:602. (Copy enclosed)
Since the term of office for the Mayor for the Village of Tickfaw does not expire until June 31, 1982, it will be presumed that more than one year will exist on the unexpired portion of the term as of the date a vacancy will occur. Therefore, pursuant to R.S. 18:602, the Board of Aldermen of the Village of Tickfaw must, within ten (10) days after the vacancy occurs, issue a proclamation ordering a special election to fill the vacancy and specifying the date on which the primary and general elections will be held to fill the vacancy. The date selected for the holding of the primary and general elections must comply with the provisions of R.S. 18:402 (E). (Copy enclosed)
If a proclamation calling a special election i, s issued by the Tickfaw Board of Aldermen prior to July 12, 1980, the .primary election for the filling of this vacancy should be held on October 18, 1980, and the general election on November 29, 1980.
Additionally, should a vacancy occur, the Board of Aldermen of the Village of Tickfaw should appoint someone meeting the qualifications for the office to fill the position of mayor until the election can be held. The person filling this vacancy on an interim basis may qualify for this position at the subsequent election.
Should you be appointed to fill the position of mayor on an interim basis, you would have to resign your position as an aldermen of the Village of Tickfaw.
In answer to your last question, a copy of the 1974 Louisiana Constitution may be purchased from the Secretary of State's Office.
It is hoped this opinion has answered your questions. If we can be of further assistance, please contact us.
Sincerely,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: _____________________ TOMMY D. TEAGUE STAFF ATTORNEY
TDT/dyj